******************************************************

The "officially released" date that appears near the
beginning of an opinion is the date the opinion will be
published in the Connecticut Law Journal or the date it
is released as a slip opinion. The operative date for the
beginning of all time periods for the filing of postopinion
motions and petitions for certification is the "officially
released" date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecti-
cut Law Journal and subsequently in the Connecticut
Reports or Connecticut Appellate Reports. In the event
of discrepancies between the advance release version of
an opinion and the version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is
to be considered authoritative.

The syllabus and procedural history accompanying an
opinion that appear in the Connecticut Law Journal and
subsequently in the Connecticut Reports or Connecticut
Appellate Reports are copyrighted by the Secretary of the
State, State of Connecticut, and may not be reproduced
or distributed without the express written permission of
the Commission on Official Legal Publications, Judicial
Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* JEFFREY Z.[*]
## (AC 48167)

Clark, Wilson and Sheldon, Js.

*Syllabus*

The defendant, who had been convicted, on a plea of guilty, of crimes including sexual assault in the third degree, appealed following the trial court's denial of his motion to terminate his registration as a convicted sex offender and his petition to restrict the dissemination of that information. The defendant had been sentenced to five years of incarceration, execution suspended after time served, and three years of probation, as a result of his participation with two other individuals in the sexual assault of a minor. The defendant claimed, inter alia, that his sex offender registration requirement should have been limited to ten years, as set forth in the statute ((Rev. to 1997) § 54-102r (f)) in effect at the time he was required to register, instead of a lifetime registration requirement, as the court found, pursuant to the statutory (§ 54-250 et seq.) scheme that took effect upon the legislature's repeal of (Rev. to 1997) § 54-102r (f). *Held*:

The trial court properly denied the defendant's motion to terminate his registration as a convicted sex offender, as the state, contrary to the defendant's assertion, did not fail to keep a promise, in exchange for his guilty plea, to limit his registration period to ten years, and, because of the mandatory nature of the fixed ten year period under (Rev. to 1997) § 54-102r (f), whether or for how long the defendant should register could not be a negotiable term of a plea agreement.

The defendant's right to due process was not violated by the retroactive application of the statutory (§ 54-252 (b)) requirement that he register for life as a convicted sex offender, which was a nonpunitive, regulatory consequence of his conviction that the legislature can modify as it deems necessary to promote the public interest.

The trial court's implied factual finding that the defendant's underlying criminal conduct was a "sexually violent offense" in violation of subdivision (1) of the statute ((Rev. to 1995) § 53a-72a (a)) criminalizing sexual assault in the third degree was not clearly erroneous, as the defendant failed to rebut the legislatively created presumption that all persons convicted under (Rev. to 1995) § 53a-72a (a), except under subdivision (2) of that statute, had committed a "[s]exually violent offense" as defined in § 54-250 (11) (A), and, although documents were absent from the record that would have described the factual basis of the defendant's plea, the unchallenged statement of the victim's mother, which had been admitted into evidence,

---

[*]In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

described the nature of the sexual assault and supported the court's implied finding that the defendant had been convicted under subdivision (1) of (Rev. to 1995) § 53a-72a (a).

The defendant could not prevail on his claim that the trial court improperly declined to terminate his sex offender registration because a different court previously had granted similar motions filed by the other participants in the assault, as the court in the present case was not bound by the decisions of another court made in different cases fourteen years earlier.

Furthermore, termination of the defendant's lifetime sex offender registration was no longer available to him, as the legislature's amendment of § 54-252 (a) eliminated both the ability of those convicted of a sexually violent offense to apply for release from that obligation and the trial court's authority to grant such an application.

The trial court properly denied the defendant's petition to restrict the dissemination of his sex offender registration information, as the court's finding that he had served time in jail as a result of his conviction disqualified him from seeking such relief pursuant to statute (§ 54-255 (c) (5) (A)), and, in making that determination, which was not clearly erroneous, the court did not abuse its discretion, as the defendant claimed, by taking judicial notice of the only available transcript of any proceeding in which his sentence was discussed, which made clear that it was agreed that the seven weeks he had served in presentence confinement was contemplated as part of his eventual sentence.

Argued March 9—officially released June 30, 2026

*Procedural History*

Substitute information charging the defendant with the crimes of sexual assault in the third degree and risk of injury to a child, brought to the Superior Court in the judicial district of New London, where the defendant was presented to the court, *Parker, J.*, on pleas of guilty; judgment of guilty; thereafter, the court, *Newson, J.*, denied the defendant's motion to terminate his registration as a sex offender and his petition to restrict dissemination of his sex offender registration information, and the defendant appealed to this court. *Affirmed*.

*Judie Marshall*, assigned counsel, for the appellant (defendant).

*Timothy F. Costello*, supervisory assistant state's attorney, with whom were *Jessica DellaRatta*, certified legal intern, and, on the brief, *Paul J. Narducci*, state's

attorney, and *Theresa Ferryman*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SHELDON, J. The defendant, Jeffrey Z., appeals following the decision of the trial court denying his motion to terminate his registration as a sex offender based upon his 1997 conviction for sexual assault in the third degree and his alternative petition, pursuant to General Statutes § 54-255 (c) (5), to restrict the dissemination of his registration information concerning that conviction to law enforcement purposes only and to not make such information available for public access. On appeal, the defendant claims on several grounds that the court erred in denying both of these requests for relief, thereby requiring him to remain registered as a sex offender based upon his third degree sexual assault conviction, in a publicly accessible filing, for the rest of his life. We disagree with the defendant's claims of error and, accordingly, affirm the court's decision denying both of his requests for relief.

The following procedural history and facts, as recounted by the court in its memorandum of decision and supported by the record before us, are relevant to our resolution of this appeal. On November 18, 1996, the defendant pleaded guilty to one count each of sexual assault in the third degree in violation of General Statutes (Rev. to 1995) § 53a-72a, and risk of injury to a child in violation of General Statutes (Rev. to 1995) § 53-21 (1),[1] in connection with an incident on or about November 1, 1995, in which he and two other teenage boys, all seniors at the same Connecticut high school, sexually assaulted a teenage girl who was then a freshman at the school. On January 7, 1997, after the Department of Adult Probation had prepared and filed a presentence investigation report concerning the defendant's background

---

[1]Although §§ 53-21 and 53a-72a have been amended since the defendant's violations of those statutes in 1995, those amendments have no bearing on the merits of this appeal. For convenience, we refer to the 1995 revisions of those statutes unless otherwise indicated.

and his relevant criminal conduct, the court, *Parker, J.*, sentenced him on both charges, in accordance with the prosecutor's recommendation under a plea agreement, to serve identical terms of five years of imprisonment, execution suspended at the time of sentencing, followed by three years of probation. Shortly after he was sentenced and released from pretrial confinement to begin serving the probationary portion of his total effective sentence, the defendant registered as a sex offender pursuant to General Statutes (Rev. to 1997) § 54-102r,[2] which then required him to maintain such registration for ten years based upon his conviction of sexual assault in the third degree.

On May 1, 2024, after continuously maintaining his sex offender registration based upon his third degree sexual assault conviction for more than twenty-eight years—initially under § 54-102r, but later under new statutory provisions known as Megan's Law, as codified at General Statutes § 54-250 et seq., and subsequently amended by Number 99-183 of the 1999 Public Acts (P.A. 99-183) to require that all persons convicted of sexually violent offenses, including sexual assault in the third degree under § 53a-72a (a) (1), maintain their sex offender registrations for life—the defendant filed a motion to terminate his sex offender registration based upon his third degree sexual assault conviction. The thrust of the defendant's motion was that, because at the time he pleaded guilty to third degree sexual assault, he could only be obliged to register as a sex offender for ten years, he should never have been subjected to the enhanced statutory obligation under P.A. 99-183 to remain so registered for life, as the state has argued.

The grounds upon which the defendant claimed before the trial court, and now contends on appeal, that his sex offender registration period for third degree sexual

---

[2]We note that § 54-102r was repealed in 1998. See Public Acts 1998, No. 98-111, § 12. Therefore, unless otherwise indicated, we refer in this opinion to the 1997 revision of that statute, which was in effect at the time the defendant committed the crimes at issue and when he was sentenced.

assault should be limited to ten years include: **(1)** he was induced to plead guilty to that offense by a promise from the state that, if he did so, he would only be required to register as a sex offender for ten years and, thus, the later imposition upon him of the enhanced statutory obligation to remain so registered for life has denied him an essential benefit of his plea bargain in violation of his federal due process rights under *Santobello* v. *New York*, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971); **(2)** because the available records of his plea and sentencing do not specify or otherwise establish the particular subdivision of § 53a-72a (a) under which he pleaded guilty, he cannot lawfully be required to maintain his sex offender registration for life, for such an obligation can only be imposed on one who has been convicted under subdivision **(1)** of § 53a-72a (a); and **(3)** even if he otherwise could have been required to register for life as a sex offender based upon his conviction for third degree sexual assault, he should be released from that obligation in this case on grounds of equity and "horizontal stare decisis" because similar motions to terminate sex offender registration filed by his similarly situated codefendants previously were granted by a different Superior Court judge. The state disputed these claims before the trial court and now opposes reversal of the court's decision rejecting them in the course of denying the defendant's motion to terminate on the following grounds: **(1)** the record is inadequate to review such claims; **(2)** the court had no statutory authority to order the termination of any person's sex offender registration for a sexually violent offense following the passage of P.A. 99-183; **(3)** the court was not required to enforce a ten year limitation on the defendant's sex offender registration period in order to enforce a promise allegedly made to him by prosecutors during plea negotiations because the obligation to so register was a mandatory, nonpunitive regulatory consequence of his conviction that neither was nor could have been a negotiated term of his plea agreement; **(4)** the record supports the court's determination that the defendant's conviction of third degree sexual assault was based upon conduct

in violation of subdivision (1) of §53a-72a (a), a sexually violent offense for which lifetime registration as a sex offender is statutorily required; and (5) the defendant is not entitled to the granting of his motion to terminate sex offender registration merely because another judge previously granted similar motions to terminate filed by his similarly situated codefendants.

On July 31, 2024, before the court ruled on the defendant's motion to terminate his sex offender registration, he filed, as an alternative request for partial relief from the burden of maintaining such registration for life, a petition pursuant to §54-255 (c) (5) for the issuance of an order directing state officials charged with maintaining Connecticut's sex offender registry to restrict the dissemination of his registration information to law enforcement purposes only and to not make such information available for public access. In support of this petition, the defendant asserted that he had satisfied all of the statutory requirements for seeking such relief under §54-255 (c) (5), including that he had served no time in jail or prison as a result of his conviction, and argued that restricting the dissemination of his registration information to law enforcement purposes only was appropriate because making such information available for public access was not required for public safety. The state opposed the defendant's petition on several grounds, which it now reasserts in opposition to this appeal from the court's decision denying his petition, including: (1) the record is inadequate to review the defendant's claims; (2) the defendant is not eligible to seek relief under §54-255 (c) (5) because he did in fact serve time in jail as a result of his conviction for third degree sexual assault; and, (3) even if he was eligible to seek relief under §54-255 (c) (5) despite having served several weeks in jail while awaiting sentencing, the court did not abuse its discretion in denying his petition on the alternative ground that making his sex offender registration information available for public access was required for public safety.

After conducting hearings on the defendant's motion to terminate his sex offender registration on June 3 and July 22, 2024, and on both that motion and his alternative petition to restrict dissemination of sex offender registration information on August 15, 2024, the court, *Newson, J.*, orally denied both such requests for relief in open court on the latter date. As for the motion to terminate his sex offender registration, the court reviewed the motion on the merits over the state's objection but agreed with the state on each of its substantive arguments in opposition thereto. As for the petition to restrict dissemination of the defendant's sex offender registration information to law enforcement purposes only, and to not make such information available for public access, the court ruled that the defendant was ineligible to seek such relief under § 54-255 (c) (5) because the time he had spent in jail before being sentenced for third degree sexual assault constituted the service of jail time as a result of that conviction. The court formalized its rulings in a memorandum of decision issued on August 16, 2024.[3] This appeal followed.

We begin our review of the defendant's claims with a history of relevant portions of Connecticut's sex offender registration laws. The defendant's 1997 conviction under § 53a-72a was classified as a "[s]exual assault" within the meaning of Connecticut's first sex offender registration law, § 54-102r. See General Statutes (Rev. to 1997) § 54-102r (a) (1) (A) (defining "[s]exual assault" to include violation of § 53a-72a). As a result of that conviction, the defendant was initially required to remain registered as a sex offender for a period of ten years. See General Statutes (Rev. to 1997) § 54-102r (f) ("[a] law enforcement agency shall maintain a registration on a person for ten years"); see also General Statutes (Rev. to 1997) § 54-102r (b) (requiring persons convicted of sexual assault to register with chief of police of police department or resident state trooper for municipality in which such person will reside).

---

[3] The court issued a corrected decision on November 6, 2024, correcting a scrivener's error as to the date of the defendant's guilty plea.

Effective October 1, 1998, however, § 12 of No. 98-111 of the 1998 Public Acts (P.A. 98-111) repealed § 54-102r and replaced it with the current statutory scheme, commonly referred to as Megan's Law, which is now codified at § 54-250 et seq. "The intent behind this legislation was to alert the public by identifying potential sexual offender recidivists when necessary for public safety." (Internal quotation marks omitted.) *State* v. *Boysaw*, 99 Conn. App. 358, 363, 913 A.2d 1112 (2007). Megan's Law imposed sex offender registration requirements on all persons convicted or found not guilty by reason of mental disease or defect of criminal offenses falling within the following four categories: (1) offenses against minor victims and nonviolent sexual offenses; General Statutes § 54-251; (2) sexually violent offenses; General Statutes § 54-252; (3) sexual offenses committed in another jurisdiction; General Statutes § 54-253; and (4) felonies committed for a sexual purpose. See General Statutes § 54-254; *State* v. *Waterman*, 264 Conn. 484, 490–91, 825 A.2d 63 (2003). Each person convicted of an offense falling within any of these categories was required to register as a sex offender with the Department of Public Safety, now known as the Department of Emergency Services and Public Protection, at the time and in the manner prescribed by law. See General Statutes (Rev. to 1999) § 54-250 et seq.

Section 3 of P.A. 98-111 provides in relevant part that "[a]ny person who has been convicted . . . of a sexually violent offense, and is released into the community on or after October 1, 1988, shall . . . register . . . with the Commissioner of Public Safety . . . and shall maintain such registration until released from this obligation in accordance with section 6 of this act. . . ." See General Statutes (Rev. to 1999) § 54-252 (a). Section 6 of P.A. 98-111, in turn, provides that "[a] person required to register under section 3 of this act shall maintain his registration for not less than ten years from the date of his release into the community, after which he may apply to the court in which he was convicted . . . for release from the obligation to register." See General Statutes (Rev. to

1999) § 54-255. Megan's Law thereby changed the period of time a person convicted of a sexually violent offense must remain registered as a sex offender on the basis of his conviction from a fixed period of ten years, as previously specified in § 54-102r (f), to a minimum period of ten years, continuing thereafter until the court in which he was convicted granted his subsequent application for release from the obligation to remain so registered.

Less than one year later, moreover, with the passage of P.A. 99-183, which became effective on July 1, 1999, the legislature made two significant changes to Megan's Law that directly concern the issues raised in the present appeal. First, it enhanced, once again, the statutory obligation of any person convicted of a sexually violent offense to maintain his sex offender registration by increasing the period of such registration from a variable term of at least ten years to a mandatory period of the registered offender's lifetime. See General Statutes § 54-252 (a). Second, it eliminated the preexisting statutory right of any sex offender so registered on the basis of his conviction of a sexually violent offense to apply to the court in which he was convicted, under General Statutes (Rev. to 1999) § 54-255, "for release from the obligation to register . . . ." In its stead, P.A. 99-183 substituted the current statutory scheme under § 54-255 (c), which provides that certain sex offenders so registered based upon their convictions of sexually violent offenses could seek limited relief from the burden of maintaining their registrations for life by petitioning the court for orders requiring state officials charged with maintaining the sex offender registry to restrict the dissemination of their registration information to law enforcement purposes only, and to not make such information available for public access. See General Statutes § 54-255 (c). Among those made eligible to petition for such relief under P.A. 99-183 was any person who "(5) has been convicted . . . of any crime between October 1, 1988, and September 30, 1998, which requires registration under sections 54-250 to 54-259, inclusive, and (A) served no jail or prison time as a result of such conviction or finding of not guilty

by reason of mental disease or defect, **(B)** has not been subsequently convicted or found not guilty by reason of mental disease or defect of any crime which would require registration under sections 54-250 to 54-259, inclusive, and **(C)** has registered with the Department of Public Safety in accordance with sections 54-250 to 54-259, inclusive . . . .'' P.A. 99-183, §6; see General Statutes § 54-255 (c). Although this statutory procedure has remained the same, in substance, since P.A. 99-183 became effective, all statutory references in Megan's Law to the Department of Public Safety were changed in 2011, by the enactment of No. 11-51 of the 2011 Public Acts, to the Department of Emergency Services and Public Protection. A trial court is empowered to grant the petition to restrict dissemination of sex offender registration information of any statutorily eligible offender as to whom it finds that dissemination of such information for other purposes, or to the general public, is not required for public safety. See General Statutes § 54-255 (c) (court may order Department of Emergency Services and Public Protection to restrict dissemination of registration information to law enforcement purposes only and to not make such information available for public access, provided court finds that dissemination of such information is not required for public safety).

With this statutory history in mind, we turn to the defendant's claims.

I

The defendant first claims that the court improperly denied his motion to terminate his sex offender registration because (1) the prosecutor failed to keep a promise made to him by the state, in agreeing to resolve the charges against him by having him plead guilty to, inter alia, third degree sexual assault, that he would only be required to maintain his registration as a sex offender for a period of ten years, as required by law at the time of his plea and sentencing; (2) he was not properly subjected to a lifetime obligation to maintain his registration as a sex offender based upon his conviction for third

degree sexual assault because the available record does not establish that he was convicted of violating subdivision **(1)** of §53a-72a **(a)**, the only part of that statute that has been classified as a sexually violent offense for which a convicted offender must maintain his resulting sex offender registration for life; and **(3)** similar motions to terminate sex offender registration previously filed by his similarly situated codefendants were granted by a different Superior Court judge. We are not persuaded.

## A

The defendant first argues that the ten year obligation to maintain his registration as a sex offender that was statutorily imposed upon him after he pleaded guilty to and was sentenced for sexual assault in the third degree was part of the promise to him made by the state as part of his plea agreement, and thus the later imposition upon him of an enhanced statutory obligation to maintain that registration for life increased his sentence in an illegal manner, violating the terms of his plea agreement and his federal due process rights under the authority of *Santobello* v. *New York*, supra, 404 U.S. 257. On that basis, he argues that the court erred in denying his motion to terminate his lifetime registration as a sex offender, which he analogizes to a motion to correct an illegal sentence under Practice Book §43-22.[4] We are not persuaded.

"The United States Supreme Court in *Santobello* . . . first described when a defendant may invoke a provision such as Practice Book §43-22 to challenge a sentence imposed in an illegal manner for an alleged violation of his right that the government keep its plea agreement promises. The court in *Santobello* held that the adjudicative element inherent in accepting a plea of guilty must be attended by safeguards to insure the defendant what is reasonably due in the circumstances.

[4]Practice Book §43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. . . . A *Santobello* claim provides a remedy when the terms of a valid and enforceable plea agreement have not been upheld." (Citation omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Montanez*, 149 Conn. App. 32, 39–40, 88 A.3d 575, cert. denied, 311 Conn. 955, 97 A.3d 985 (2014). "If the state makes promises to the defendant in order to induce a guilty plea, those promises must be fulfilled . . . and [t]he breaking of a promise made by the prosecutor as a result of plea negotiations is sufficient to invalidate a conviction." (Citation omitted; internal quotation marks omitted.) *State* v. *Nelson*, 23 Conn. App. 215, 219, 579 A.2d 1104, cert. denied, 216 Conn. 826, 582 A.2d 205 (1990), cert. denied, 499 U.S. 922, 111 S. Ct. 1315, 113 L. Ed. 2d 248 (1991); see also Practice Book § 43-22. "A plea agreement is much like a contract, and its validity depends on contractual principles that must be evaluated with reference to the requirements of due process. . . . An appellate or habeas court looks to what the parties reasonably understood the terms of the agreement to mean." (Citations omitted.) *Martinez* v. *Commissioner of Correction*, 105 Conn. App. 65, 72, 936 A.2d 665 (2007), cert. denied, 285 Conn. 917, 943 A.2d 475 (2008).

The court interpreted the defendant's argument to be that the expectation of both sides at the time of the plea agreement was that the defendant would have to register for only ten years as a sex offender and that the legislature interfered with that expectation by modifying his sex offender registration obligation to require lifetime registration. The court first noted that the defendant had provided no legal authority to support the theory that a *Santobello* claim, as opposed to another type of legal claim, is a proper vehicle for avoiding the negative impact of subsequent legislative action on the fulfillment of promises made in a plea agreement. The court

determined that *Santobello* addressed only the conduct of the prosecutor in inducing detrimental reliance on unkept promises made during the plea negotiation process and ruled that the defendant's claim failed because he had offered no claim or evidence that the prosecutor had failed to uphold a promise made during plea negotiations. The court further determined that the defendant's claim failed because his obligation to register as a sex offender based upon his third degree sexual assault conviction was not an element of his criminal sentence for that offense but a mandatory regulatory requirement imposed upon him and all others convicted of that offense, without exception.

We agree with the court that the purpose of that mandatory requirement was to enhance public safety by warning community members of the presence among them of a potential recidivist who previously had been convicted of such an offense. See *State* v. *Pentland*, 296 Conn. 305, 314, 994 A.2d 147 (2010) ("[T]he requirement to register as a sex offender under Megan's Law is regulatory rather than punitive in nature. . . . The legislature enacted the law to protect the public from sex offenders." (Citation omitted; internal quotation marks omitted.)). For that reason, laws imposing sex offender registration obligations on persons previously convicted of sexual assault and other sexual offenses, who were not subject to such obligations under the terms of their sentences, have been upheld over challenges that they constitute ex post facto laws; see, e.g., *State* v. *Kelly*, 256 Conn. 23, 94, 770 A.2d 908 (2001); or that they violate a defendant's rights under the state constitution. See *State* v. *Little*, 127 Conn. App. 336, 354, 14 A.3d 1036 ("the defendant [who pleaded guilty to sexual assault in the third degree and was sentenced in 1991] has not demonstrated that his rights under the constitution of Connecticut were violated by the [retroactive application of the] requirement that he register as a sex offender under § 54-252"), cert. denied, 302 Conn. 928, 28 A.3d 343 (2011).

The postjudgment imposition of a lifetime sex offender registration obligation on the defendant in the present

case did not result from the breaking of a promise by the prosecutor to limit the period of his sex offender registration to ten years. Instead, to reiterate, it resulted from the legislature's repeal of the previous registration statute and its replacement with another statute that imposed a lengthier, more stringent registration obligation upon all persons convicted of sexually violent offenses. At the time of the defendant's conviction in 1997, he was subject to § 54-102r, which imposed on him a fixed ten year registration obligation due to his third degree sexual assault conviction. Because of the mandatory nature of that obligation, any decision as to whether or for how long the defendant should register as a sex offender due to that conviction was not for the court to make or, thus, for the prosecutors to negotiate or recommend pursuant to a plea bargain. Sex offender registration is not a variable sentencing factor; see *State* v. *Waterman*, supra, 264 Conn. 489; and, as such, it cannot be a negotiable term of the plea agreement.

Retroactive application of the lifetime registration requirement does not violate the defendant's right to due process. Our Supreme Court has held that individuals subject to registration under § 54-102r were statutorily required, pursuant to § 54-252 (b), to register under the requirements set forth in the new statutory scheme, § 54-250 et seq. See *State* v. *Boysaw*, supra, 99 Conn. App. 365; see also General Statutes § 54-252 (b) ("[a]ny person who has been subject to the registration requirements of section 54-102r of the general statutes, revised to January 1, 1997, as amended by section 1 of public act 97-183, shall . . . register under this section and thereafter comply with the provisions of sections 54-102g and 54-250 to 54-258a, inclusive").

Accordingly, we agree with the trial court that a convicted sex offender's obligation to register as a sex offender is a nonpunitive regulatory consequence of his conviction that the legislature can modify over time as it determines to be necessary to promote the public interest rather than an element of his criminal sentence that

cannot be changed once it is imposed. The defendant's *Santobello* claim fails.

B

The defendant next argues that, even if he cannot prevail on his *Santobello* claim, the court should have granted his motion to terminate his sex offender registration based upon his third degree sexual assault conviction because the record does not establish, and thus the state did not prove, that the subdivision of § 53a-72a (a) under which he was convicted constituted a sexually violent offense under the current version of Megan's Law for which lifetime registration as a sex offender is required. He argues, more particularly, that, because a person convicted of sexual assault in the third degree cannot be required to maintain his resulting sex offender registration for life unless he is convicted under subdivision (1) of § 53a-72a (a), he is entitled to be relieved of that obligation in the present case because the state cannot prove that he was, in fact, convicted of having violated the statute in a manner consistent with subdivision (1) of § 53a-72a (a). We are not persuaded.

We begin our analysis with the statutory language of § 54-250 (11) (A), which defines a "[s]exually violent offense" in relevant part as "a violation of . . . 53a-72a, except subdivision (2) of subsection (a) of said section . . . ." The version of § 53a-72a in effect at the time of the defendant's alleged criminal conduct, in turn, provided that a person is guilty of sexual assault in the third degree when he "(1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person, or (B) by the threat of use of force against such other person or against a third person, which reasonably causes such other person to fear physical injury to himself or herself, or a third person, or (2) engages in sexual intercourse with another person whom the actor knows to be related to him or her within any of the degrees of kindred specified in section 46b-21."[5]

[5]Presently, General Statutes § 53a-72a provides: "A person is guilty of sexual assault in the third degree when such person (1) compels another

General Statutes (Rev. to 1995) § 53a-72a (a). Only a conviction grounded in subdivision (1) of § 53a-72a (a), which requires proof beyond a reasonable doubt that the offender compelled another person to submit to sexual contact by the use or threatened use of force against her or a third person, results in the imposition upon the offender, under § 54-250 (11) (A), of the obligation to remain registered as a sex offender for life.

The defendant first claims that the record is insufficient to establish that he was convicted of third degree sexual assault under subdivision (1) of § 53a-72a (a) because the clerk's sentencing mittimus indicates only the name and number of the statute defining that offense, not the particular portion of the statute under which he entered his plea of guilty. He further notes that several documents that would have clarified the state's theory of liability for that offense, including the transcripts of his guilty plea and sentencing, are no longer available.

In rejecting the defendant's argument that his motion should be granted because the trial court record is insufficient to prove he was convicted of a sexually violent offense, the trial court determined that the intent of the legislature in defining the term "[s]exually violent offense" as it did in § 54-250 (11) (A)—to include "a violation of . . . [§] 53a-72a, except subdivision (2) of subsection (a) of said section"—was to create a rebuttable presumption that all persons convicted under that statute

person to submit to sexual contact (A) by the use of force against such other person or a third person, or (B) by the threat of use of force against such other person or against a third person, which reasonably causes such other person to fear physical injury to himself or herself or a third person, or (2) subjects another person to sexual contact and such other person is mentally incapacitated or impaired because of mental disability or disease to the extent that such other person is unable to consent to such sexual contact, or (3) engages in sexual intercourse with another person whom the actor knows to be related to him or her within any of the degrees of kindred specified in section 46b-21."

Because the version of the third degree sexual assault statute applicable to the defendant did not include a separate provision concerning sexual contact with a mentally incapacitated or impaired individual, we do not address that provision in our analysis.

had committed sexually violent offenses, but to permit any person so convicted to rebut that presumption, and thus avoid the consequences of that designation of his offense, by proving that the conviction was based upon conduct falling within the exception set forth in subdivision (2) of §53a-72a. This conclusion is supported by our case law, which establishes that "exceptions to statutes are to be strictly construed with doubts resolved in favor of the general rule rather than the exception and that those who claim the benefit of an exception under a statute have the burden of proving that they come within the limited class for whose benefit it was established." (Internal quotation marks omitted.) *State* v. *Lutters*, 270 Conn. 198, 215–16, 853 A.2d 434 (2004), quoting *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, 236 Conn. 453, 473–74, 673 A.2d 484 (1996). Under this rule, the state had no burden to overcome any vagaries in the trial court record by proving that the defendant's third degree sexual assault conviction was based upon conduct violative of subdivision (1) rather than subdivision (2) of §53a-72a (a).

In light of the above-described presumption, we conclude that the record before the trial court supports its implied factual finding that the defendant's underlying criminal conduct in this case, for which he pleaded guilty and was convicted of sexual assault in the third degree, was in fact a sexually violent offense in violation of subdivision (1) of §53a-72a (a). We reach this conclusion despite the absence from the record of transcripts of the defendant's guilty plea and sentencing and of the defendant's presentence investigation report, any of which undoubtedly would have described the factual basis for his plea and thus revealed the particular theory of liability on which his conviction was based. We rely, instead, on a written statement by the mother of the victim, which was presented to the sentencing judge and later admitted as an exhibit before the trial court at the August 15, 2024 motions hearing, in which she described the nature of the defendant's and his codefendants' sexual assault of her daughter and its devastating

consequences. In that statement, the victim's mother, who spoke for the victim because she had died by suicide in the aftermath of the sexual assault, explained that her daughter was a freshman in high school when she was gang raped by three popular seniors, including the defendant. This description of the defendant's and his codefendants' criminal conduct, which was never objected to, rebutted or otherwise challenged by the defendant, well supports the trial court's implied factual finding that the defendant was convicted under § 53a-72a (a) (1), which provides that a person is guilty of sexual assault in the third degree when he compels another to submit to sexual contact by use of force or by the threat of use of force against her.

Nothing in the record, moreover, supports the defendant's suggestion that he may instead have been convicted under subdivision (2) of § 53a-72a (a), for which a lifetime obligation to register as a sex offender cannot be imposed because it does not define conduct classified as a sexually violent offense under Megan's Law. Subdivision (2) provides that a person is guilty of sexual assault in the third degree when such person "engages in sexual intercourse with another person whom the actor knows to be related to him or her within any of the degrees of kindred specified in section 46b-21." General Statutes (Rev. to 1995) § 53a-72a (a) (2). General Statutes § 46b-21, in turn, provides that no person may marry such person's parent, grandparent, child, grandchild, sibling, parent's sibling, sibling's child, stepparent, or stepchild. In her statement to the court, the victim's mother did not address this subdivision of § 53a-72a (a) explicitly but made statements clearly revealing that the assailants were from different families than her daughter and, thus, that they were not related to her in any of the ways specified in § 46b-21. In particular, she described how the community rallied around the offenders because of the "power . . . and positions" that "their families" held in the community, and revealed that she had to withdraw her daughter from the school she and her assailants were attending at the time of the sexual assault because of the

community's adverse reaction to her complaint against the assailants. Nowhere in the record or on appeal is this characterization of the incident as a gang rape by persons unrelated to the victim challenged or contradicted.

The defendant's only response to such evidence is to suggest that he may actually have been prosecuted under subdivision (2) of § 53a-72a (a) because, as the trial prosecutor conceded at the hearing on one of his codefendants' previous motions to terminate his own sex offender registration, he expected that the codefendant, who had pleaded guilty to the same charges and received the same sentence as the defendant, would be required to maintain his resulting registration as a sex offender for ten years. This argument, however, is patently specious, for at the time of the defendant's and his codefendants' guilty pleas and sentencings, each subdivision of § 53a-72a (a) required the same ten year obligation to remain registered as a sex offender of all persons convicted under it. Therefore, the trial prosecutor's admitted expectation at that time that each defendant would be required to register as a sex offender for ten years based upon his third degree sexual assault conviction can only be attributed to his correct understanding of the law's requirements for all such convictions, not to the particular theory of liability upon which the defendants' convictions were based. Not until the effective date of Megan's Law, more than one year after the defendant's and his codefendants' guilty pleas and sentencings, was any difference in registration obligations made between persons convicted under subdivisions (1) and (2) of § 53a-72a (a).

Accordingly, on the record before us on appeal, we conclude that the court's finding that the defendant was convicted under § 53a-72a (a) (1) was not clearly erroneous, for there was ample evidence to support it and essentially no countervailing evidence at all, much less evidence sufficient to leave us with a definite and firm conviction that a mistake has been made. See *State* v. *Nosik*, 245 Conn. 196, 205, 715 A.2d 673 (factual finding is not clearly erroneous when evidence exists to

support it, unless reviewing court on entire evidence is left with definite and firm conviction that mistake has been committed), cert. denied, 525 U.S. 1020, 119 S. Ct. 547, 142 L. Ed. 2d 455 (1998).

C

The defendant finally argues that the court improperly failed to apply horizontal stare decisis when it denied his motion because similar motions previously made by his codefendants had been granted by a different Superior Court judge. He contends, as a matter of equity, that he should be treated the same as his codefendants because all three had the same charges brought against them in connection with the incident here in question, all were sentenced on the same date, and each received the same or a similar sentence. We are not persuaded.

First, horizontal stare decisis, which addresses whether a court should adhere to its own earlier decisions; see *State* v. *Peeler*, 321 Conn. 375, 441, 140 A.3d 811 (2016) (*Zarella, J.*, dissenting); simply does not apply. If "[a] judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings"; (internal quotation marks omitted) *McCarthy* v. *McCarthy*, 55 Conn. App. 326, 332, 752 A.2d 1093 (1999), cert. denied, 252 Conn. 923, 752 A.2d 1081 (2000); then, by a stronger force of logic he or she is not bound by decisions of another judge made in another case. Accordingly, the trial court, *Newson, J.*, in ruling on the defendant's motion to terminate sex offender registration, was not bound by decisions made by another trial court, *Handy, J.*, fourteen years earlier, on similar motions by the defendant's codefendants to terminate their own sex offender registrations.

More significant, however, is the fact that P.A. 99-183, § 6, eliminated the remedy provided in General Statutes (Rev. to 1999) § 54-255 of releasing certain persons convicted of sexually violent offenses from the obligation to register as sex offenders. As amended, § 54-255 (c) now provides only that an eligible offender, who is registered

as a sex offender in accordance with §54-250 et seq., may petition the court for the issuance of an order restricting the state officials responsible for maintaining the state's sex offender registry to disseminating his sex offender registration information to law enforcement purposes only and to not make such information available for public access. By virtue of this amendment, the trial court in the present case lacked the authority to grant the defendant the remedy he sought because that remedy was no longer legally available to him as a person convicted of a sexually violent offense.

The legislature's decision to eliminate the ability of any person registered as a sex offender for life based upon his conviction of a sexually violent offense to apply to the trial court for release from his obligation to remain so registered eliminates the authority of the trial court to grant such an application for relief. This change in the law with the passage of P.A. 99-183 was no accident but, instead, was a conscious choice by the legislature to restrict the scope of available remedies for persons convicted of the most serious sexual offenses, as distinguished from all other registered sex offenders. This choice is well illustrated by General Statutes §54-251 (a), which establishes a shorter sex offender registration period of ten years for any person convicted of a criminal offense classified by Megan's Law as an offense against a victim who is a minor or a nonviolent sexual offense, but also provides, unlike §54-255, that the court may exempt certain persons from that registration requirement if it determines, among other things, that such registration is not required for public safety. When read together, §§54-251 and 54-255 evince a clear legislative intent to permit the court to exempt only a narrow range of less serious sex offenders from sex offender registration requirements but to impose lifetime registration obligations on all persons convicted of sexually violent offenses who may only petition the court to restrict dissemination of sex offender registration information.

For the foregoing reasons stated in part I A through C of this opinion, we conclude that the court properly

denied the defendant's motion to terminate his sex offender registration.

## II

The defendant next claims that the court erred in denying his petition to restrict the dissemination of his sex offender registration information to law enforcement purposes and to not make such information available for public access, pursuant to § 54-255 (c), based upon its determination that he had served time in jail as a result of his conviction. He disputes the court's ruling on several bases, contending that **(1)** his five year sentence of imprisonment was fully suspended, not suspended after time served as the trial court ruled, **(2)** the court erred in basing its factual findings as to the terms of his sentence on the transcript of a postsentencing violation of probation hearing, which it allegedly never provided to counsel prior to hearing argument on and adjudicating his petition, and, **(3)** even if he did spend time in jail while awaiting sentencing in this case, such time cannot be considered the service of jail time as a result of his conviction because he had not yet been convicted by the time he spent such time in jail. We are not persuaded.

Section 54-255 (c) (5) provides in relevant part that any person who "has been convicted . . . of any crime between October 1, 1988, and September 30, 1998, which requires registration under sections 54-250 to 54-258a, inclusive, and **(A)** *served no jail or prison time as a result of such conviction* . . . **(B)** has not been subsequently convicted or found not guilty by reason of mental disease or defect of any crime which would require registration under sections 54-250 to 54-258a, inclusive, and **(C)** has registered with the Department of Emergency Services and Public Protection in accordance with sections 54-250 to 54-258a, inclusive; may petition the court to order the Department of Emergency Services and Public Protection to restrict the dissemination of the registration information to law enforcement purposes only and to not make such information available for public access. . . . The court may order the Department of Emergency Services and

Public Protection to restrict the dissemination of the registration information to law enforcement purposes only and to not make such information available for public access, provided the court finds that dissemination of the registration information is not required for public safety." (Emphasis added.)

In denying his petition, the court determined that the defendant failed to satisfy the requirement of § 54-255 (c) (5) (A) that he had "served no jail or prison time as a result of such conviction . . . ." The court noted that the only transcript available of any proceeding in the defendant's case in which his sentence was discussed was a violation of probation hearing transcript from 1998, which reflects that the sentence imposed on him was five years of incarceration, execution suspended after time served, followed by three years of probation. The court stated that, "[a]lthough not privy to the negotiations that led up to the arrangement, the defendant spent time in jail on an agreed bond increase prior to sentencing, which was a seven week sentence between the change of plea and sentencing. When he returned to court on January 7, 1997, he was sentenced to time served effectively releasing him from incarceration the day his sentence was imposed." (Footnote omitted; internal quotation marks omitted.) At the August 15, 2024 hearing, defense counsel stated: "[W]e all know he spent a little bit of time in jail before the conviction to get that conviction and plea agreement."

A

The defendant argues that the court's finding that the defendant was sentenced to a term of five years of incarceration, execution suspended after time served, followed by three years of probation was clearly erroneous. We disagree.

"A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *State* v. *Nosik*, supra, 245 Conn. 205.

The trial court reasoned that, although the transcript of the sentencing hearing was missing, "the defendant is incorrect that the sentencing mittimus represents the 'final say' as to what sentence was imposed in this matter. . . . While we do not have the actual court's oral pronouncement in this case, we have multiple references, including references in writing made by the defendants, and admissions of fact during discussions, that make it known the documents produced by the clerk [do] not accurately reflect the sentence pronounced by the court or, more importantly, the specific sentences all parties know [were] agreed upon and imposed."

Given the unavailability of the transcripts from the defendant's plea and sentencing hearings, the trial court relied on what was, to the knowledge of all parties involved, the only transcript available of any proceeding involving the defendant's case in which his sentence was discussed—the 1998 transcript of his postconviction sentencing for violation of probation. At that hearing, the prosecutor stated: "Just basically by background, Your Honor will recall this accused was convicted on January 7th of 1997 on the charge of sexual assault third and risk of injury. Judge Parker at that time imposed a sentence of five years. It should be execution suspended after time served, which was a seven week sentence between change of plea and sentencing date, and three years of probation . . . ."[6]

Referencing the sentencing mittimus[7] prepared by the court clerk, which reflects a suspended sentence, the defendant argues that "[t]he next best source of information is the court file, which clearly and unambiguously establishes that the defendant received a sentence of

---

[6]The court did not revoke the defendant's probation but ordered fifty hours of community service.

[7]"The mittimus is a clerical document by virtue of which a person is transported to and rightly held in prison. . . . [A] mittimus after conviction in a criminal case is similar to an execution after judgment in a civil case; it is final process and carries into effect the judgment of the court." (Internal quotation marks omitted.) *State* v. *Hurdle*, 350 Conn. 770, 773 n.2, 326 A.3d 528 (2024).

five years, execution of which was fully suspended, followed by three years of probation." He contends that it was improper for the court to rely on the 1998 violation of probation transcript because it does not provide a contemporaneous record of what transpired at the time of his underlying plea and sentencing.

In light of the absence of the defendant's underlying plea and sentencing hearing transcripts, the state first argues that the defendant's claim challenging the court's finding that the sentencing court imposed a time served sentence is unreviewable due to the lack of an adequate record. See Practice Book §61-10 (a) (it is appellant's responsibility to provide adequate record for review). We decline to conclude that the record is inadequate because we are able to review the claim on the basis of the record before us. The state argues, in the alternative, that the defendant is not eligible for relief under § 54-255 (c) (5) (A) because the 1998 transcript reveals that he served time in jail as a result of his conviction.

The state first relies on *State* v. *Denya*, 294 Conn. 516, 986 A.2d 260 (2010), in which our Supreme Court stated that, "as a general matter, any discrepancy between the oral pronouncement of sentence and the written order or judgment will be resolved in favor of the court's oral pronouncement." Id., 531; see also *Commissioner of Correction* v. *Gordon*, 228 Conn. 384, 390–91, 636 A.2d 799 (1994) (when wording of mittimus, which is merely clerical document certified by clerk authorizing delivery of sentenced prisoner to custody of Commissioner of Correction, conflicts with sentence as pronounced by trial court, court's pronouncement prevails). *Denya* is inapplicable to the present case because the prosecutor's comments at the 1998 violation of probation hearing represent neither the trial court's oral pronouncement of sentence in this case nor a written order or judgment.

The trial court relied on the prosecutor's statement at the defendant's 1998 violation of probation hearing that the defendant had been sentenced to five years of incarceration, execution suspended after time served,

followed by three years of probation. This statement was not challenged or otherwise contradicted at the defendant's 1998 violation of probation hearing by the defendant, defense counsel, or the court, *Miano, J.*

Furthermore, at the August 15, 2024 hearing on the matters here at issue, defense counsel represented to the court that the defendant and his two codefendants were "equally involved in the case, all of them got the same sentences, all of them had the same plea agreement." Both of his codefendants' separate motions to terminate sex offender registration state that, on January 7, 1997, they were convicted of third degree sexual assault and risk of injury to a child and had imposed on them total effective sentences of five years of incarceration, execution suspended after time served, and three years of probation.

Given the sparsity of the record concerning the terms of the defendant's sentence, we cannot conclude that the court's finding that the execution of the defendant's five year sentence was suspended after time served was clearly erroneous.

B

The defendant next argues that his right to due process was violated by the court's reliance on the 1998 transcript.[8] Specifically, he contends that the 1998 transcript

---

[8]The defendant also argues that the court violated his right to due process when the court stated that, "to the actual knowledge of all parties involved," the defendant received a time served sentence when the defendant never conceded that point. Specifically, the court stated: "As stated above, to the actual knowledge of all parties involved, according to the only transcript available of any proceeding involving the defendant's case where the sentence was discussed, and in the motions filed by both codefendants when they petitioned to have their sex offender registrations terminated, the sentence imposed was five years, suspended after time served, followed by three years [of] probation." (Emphasis omitted; internal quotation marks omitted.) We disagree with the defendant's interpretation of the court's decision. Earlier in the decision, the court stated that "there are no transcripts or other records available of the change of plea or sentencing hearing for any of the defendants," and it is clear, in context, that the challenged portion of the decision refers

was not part of the record, it was not made available to the parties, and that he was not allowed to address its contents at the hearing on his petition to restrict dissemination of his sex offender registration information.

"A trial court's determination as to whether to take judicial notice is essentially an evidentiary ruling, subject to an abuse of discretion standard of review. . . . In order to establish reversible error, the [party challenging the ruling] must prove both an abuse of discretion *and a* harm that resulted from such abuse. . . . In reviewing a trial court's evidentiary ruling, the question is not whether any one of us, had we been sitting as the trial judge, would have exercised our discretion differently . . . . Rather, our inquiry is limited to whether the trial court's ruling was arbitrary or unreasonable. . . .

"The doctrine of judicial notice excuses the party having the burden of establishing a fact from introducing formal proof of the fact. Judicial notice takes the place of proof. . . . There are two types of facts considered suitable for the taking of judicial notice: those [that] are common knowledge and those [that] are capable of accurate and ready demonstration. . . . Courts must have some discretion in determining what facts fit into these categories. It may be appropriate to save time by judicially noticing borderline facts, so long as the parties are given an opportunity to be heard. . . . Notice to the parties [however] is not always required when a court takes judicial notice. Our own cases have attempted to draw a line between matters susceptible of explanation or contradiction, of which notice should not be taken without giving the affected party an opportunity to be heard . . . and matters of established fact, the accuracy of which cannot be questioned, such as court files, which may be judicially noticed without affording a hearing. . .

to the parties' knowledge of the availability of the 1998 transcript. To the extent that the court's memorandum of decision could be read as being ambiguous in this regard, we resolve such ambiguities to support rather than to undermine the judgment. See, e.g., *Zabaneh* v. *Dan Beard Associates, LLC*, 105 Conn. App. 134, 142, 937 A.2d 706, cert. denied, 286 Conn. 916, 945 A.2d 979 (2008).

. It is well established that the trial court may take judicial notice of the files of the Superior Court in the same or other cases." (Citations omitted; emphasis altered; internal quotation marks omitted.) *State* v. *Lyons*, 203 Conn. App. 551, 573–74, 248 A.3d 727 (2021).

In its memorandum of decision, the court did not expressly state that it took judicial notice of the 1998 transcript; however, the court referenced that transcript, noting that it demonstrated that the defendant had spent seven weeks in jail between his change of plea proceeding and his sentencing. We note that the docket number in the 1998 violation of probation hearing and in the 2024 hearings on his petition to restrict dissemination of his sex offender registration information is the same—CR-96-0230704-T—and, therefore, that the trial court only took judicial notice of the contents of the record in the same criminal case as the one in which it was making its rulings. However, given the centrality of the issue of the defendant's sentence to the resolution of his petition, questions of the authoritativeness of the 1998 transcript (in light of the unavailability of the defendant's plea and sentencing hearing transcripts), and the lengthy time frame between the 1998 violation of probation hearing and the 2024 hearings on the defendant's petition concerning his sex offender registration, better practice, if not principles of due process, clearly favors an opportunity to be heard on the matter to be noticed. See *Rogalis, LLC* v. *Vazquez*, 210 Conn. App. 548, 557, 270 A.3d 120 (2022) ("[b]etter practice, if not principles of due process, clearly favors an opportunity to be heard on any matter to be noticed, including such issues as the noticeability of the matter, its susceptibility to explanation or contradiction, the authoritativeness of the sources advanced in support of the proposition, and the proper use of the matter in the case at hand" (internal quotation marks omitted)).

The defendant, however, cannot claim surprise that the trial court relied on the 1998 transcript in denying his petition. At the June 3, 2024 preliminary hearing on his petition, the court stated that, "[t]he court, frankly, is

going to need transcripts, and I think they're important because of some of the claims in the motion of [the defendant's] sentencing. And then, there were, apparently, two motions related to the codefendants, where the request to terminate sex offender registration was granted." The court further noted that "the court will order those transcripts. So, those three transcripts I will order on the court's behalf. I will make sure counsel gets copies of those. To the extent that either side wants any additional transcripts, then you would be on your own to get those. But I will take care of the two codefendants' motion transcripts and [the defendant's] sentencing transcript."

The defendant's sentencing transcript, however, was unavailable, and it is clear from the statements of the court at the August 15, 2024 evidentiary hearing that the court ordered the 1998 violation of probation hearing transcript and provided counsel with copies. Specifically, the court stated: "The evidence that we are all personally aware of, the statements by [the prosecutor] at [the defendant's] violation of probation hearing and the two motions by the codefendants to request that their sex offender registrations be terminated, all indicated that the actual sentence imposed was five years suspended after time served, three years of probation." At that hearing, defense counsel did not object to or dispute the substance of the court's description of matters discussed in the 1998 transcript or the court's statement that all counsel were aware of the contents of that transcript. Additionally, the date of the electronic certification on the 1998 transcript is July 18, 2024, which predates the final August 15, 2024 hearing.

For the foregoing reasons, we cannot conclude that the court abused its discretion in taking judicial notice of the 1998 transcript.

C

The defendant last argues that the court improperly denied his petition to restrict dissemination of the record of his sex offender registration to law enforcement

purposes on the ground that he is disqualified from seeking such relief under § 54-255 (c) (5) (A) on account of the seven weeks he spent in jail while awaiting sentencing in this case. Even if the record is adequate to show that he did indeed spend such time in jail before he was sentenced, the defendant argues, such presentence time cannot logically or legally be found to constitute time "served in jail . . . as a result of [his] conviction" within the meaning of § 54-255 (c) (5) (A) because he had not yet been convicted at the time he was so incarcerated, and, thus, as he contends, such time was not served "as a result of such conviction . . . ." General Statutes § 54-255 (c) (5) (A). We disagree.

"The interpretation of a statute, as well as its applicability to a given set of facts and circumstances, presents a question of law over which our review is plenary. . . . In construing § 54-255, our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Citation omitted; internal quotation marks omitted.) *State* v. *Webber*, 225 Conn. App. 16, 29–30, 315 A.3d 320, cert. denied, 349 Conn. 915, 315 A.3d 301 (2024).

Section 54-255 (c) provides in relevant part that any person who "(5) has been convicted or found not guilty by reason of mental disease or defect of any crime between October 1, 1988, and September 30, 1998, which requires

registration under sections 54-250 to 54-258a, inclusive, and **(A)** served no jail or prison time as a result of such conviction or finding of not guilty by reason of mental disease or defect" and satisfies other criteria not relevant to our analysis may petition the court to order the Department of Emergency Services and Public Protection to restrict the dissemination of his registration information to law enforcement purposes only, and to not make such information available for public access.

The defendant contends that "[a] commonsense reading of the plain language of the statute requires a finding that the defendant did not serve a jail or prison sentence as a result of the conviction. A prosecutor considering presence confinement in fashioning a plea offer does not mean the defendant served jail or prison as a result of the conviction, but rather it was a factor considered in offering a fully suspended sentence." (Emphasis omitted.) The defendant further argues that his "sentence was imposed on January 7, 1997, at which time he received a fully suspended sentence and was released into the community. As a result of the defendant's sentence, which is the judgment of conviction, he did not serve a period of incarceration."

The interpretation posed by the defendant—that time served in jail or prison *must always follow* the judgment of conviction to be considered "a result of such conviction" for purposes of § 54-255 (c) (A) (5)—is unreasonable. In the present case, according to the 1998 transcript; see part II A of this opinion; the defendant was sentenced to five years of incarceration, execution suspended after time served, "which was a seven week sentence between change of plea and sentencing date . . . ." Additionally, at the August 15, 2024 hearing, defense counsel, in arguing that the defendant did not spend time in jail as a result of his conviction, acknowledged that "we all know he spent a little bit of time in jail before the conviction to get that conviction and plea agreement." These transcripts make clear that it was agreed that the defendant would serve a seven week term in presence confinement in order

to earn the opportunity to receive a sentence suspended after time served. This was not a situation in which the defendant spent time in pretrial detention solely because of a financial inability to obtain pretrial release on bail, and we make no determination whether under such hypothetical circumstances time spent in pretrial detention would constitute time served "as a result of such conviction," disqualifying him from filing a petition to restrict dissemination of his sex offender registration information under § 54-255 (c) (5) (A).

The seven weeks the defendant spent in jail while awaiting sentencing was contemplated as part of his eventual sentence. A sentence served prior to conviction is considered to be a result of his conviction. "A judge's sentence of time served necessarily incorporates the time a defendant was imprisoned prior to trial, unless specifically stated otherwise. A sentence of time served, i.e., the period of time served, *does* constitute a sentence of imprisonment." (Emphasis in original.) *Rodriguez* v. *United States*, 111 F. Supp. 2d 112, 114 (D. Conn. 1999); see also *Spina* v. *Dept. of Homeland Security*, 470 F.3d 116, 127–28 (2d Cir. 2006) ("[T]he federal government, fifty states, and the District of Columbia provide by statute, rule, or court decision that time spent by a defendant in pre-conviction detention is to be treated as a day-for-day credit or reduction of the term of imprisonment imposed upon conviction. This unanimity is strong evidence of a common understanding that, after judgment, any credited pre-conviction detention effectively becomes time served on the imposed term of imprisonment." (Footnote omitted.)). Accordingly, the court properly concluded that the defendant did not satisfy the statutory requirement for petitioning for an order restricting the dissemination of his registration information to law enforcement purposes only and to not make such information available to the public.

For the reasons set forth in part II A through C of this opinion, we conclude that the court properly denied the defendant's petition to restrict dissemination of his sex

offender registration information to law enforcement purposes only and to not make such information available to the public.

The decision of the trial court is affirmed.

In this opinion the other judges concurred.